UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNIE ELY, a Participant in the PACE Industry Union-Management Pension Fund,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE PACE INDUSTRY UNION-MANAGEMENT PENSION FUND,<br><br>Defendant. | Case No. 1:19-mc-316-CWD<br><br>**ORDER** |

Clearwater Paper Corporation moved to quash two subpoenas served upon it by Defendant Board of Trustees of the PACE Industry Union Management Pension Fund ("PIUMPF") pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i). The Court issued an order on November 14, 2019, granting the motion in part. The parties notified the Court regarding a dispute over the interpretation of its order, requesting clarification of the same. The Court ordered simultaneous briefing to be submitted. (Dkt. 32, 33.) Having reviewed the parties' submissions, and for the reasons below, the Court will decline PIUMPF's request to expand the scope of the Court's order.

**ORDER - 1**

The Rehabilitation Plan was adopted effective July 19, 2010, and by resolution dated April 10, 2013, the Board of Trustees retroactively adopted, as of November 15, 2012, the 2012 Amended and Updated Rehabilitation Plan imposing the AFD Exit Fee. As set forth in the Court's order and summarized here, Plaintiff Donnie Ely participated in negotiations with the union. He signed the September 1, 2014 collective bargaining agreement on behalf of Clearwater, along with others. Ely testified that it was during the 2014 negotiations in which Clearwater agreed to abide by the terms of the 2010 PIUMPF rehabilitation plan as amended. Documents reviewed during Ely's deposition appear to indicate Clearwater negotiated a provision in the 2014 CBA regarding withdrawal from the PIUMPF plan. Clearwater may also have made a presentation during the negotiations period to its employees or others regarding the critical status of the PIUMPF plan.

Because of these facts, the Court found that:

> Topic 11 and document request 11[1] may be relevant to the claims and defenses in this lawsuit, insofar as there is evidence Clearwater, during the 2014 collective bargaining negotiations resulting in the CBA signed on September 1, 2014, negotiated a provision allowing for Clearwater's withdrawal from PIUMPF. It appears also that there may have been presentations to or from Clearwater about the PIUMPF rehabilitation plan during this time period. While Clearwater's communications with its attorneys during the negotiations would be protected under the attorney-client privilege, any discussions Clearwater's representatives had with third parties would not. Accordingly, discovery into these subject matters may be allowed.

---

[11] Topic 11 sought information and documents regarding Clearwater's "collective bargaining negotiations with any union, to the extent those negotiations relate to any aspect of Clearwater's participation in the Pension Fund."

There were two rounds of bargaining between Clearwater and its employees represented by the United Steelworkers: negotiations in 2014, which resulted in a collective bargaining agreement covering 2014-2017, and negotiations beginning in 2017, which are ongoing and have not yet resulted in a new collective bargaining agreement. PIUMPF seeks permission to inquire into Clearwater's collective bargaining negotiations with the union in 2017.

The Court declines to expand the scope of its order beyond inquiry into the 2014 collective bargaining negotiations, as set forth in its November 14, 2019 Order. Ely's claim in the underlying action, Case No. 3:18-cv-00315-CWD, is brought pursuant to 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3), and presents a substantive challenge to the reasonable measures under which the amendment to the 2012 Updated and Amended Rehabilitation Plan was adopted by the Board of Trustees as Plan Sponsor pursuant to the authority given to it by 29 U.S.C. § 1085(e), ERISA § 305(e).

The PPA defines a rehabilitation plan as a plan that consists of "actions…to be proposed to the bargaining parties, formulated, based on reasonably anticipated experience and reasonable actuarial assumptions…", and in the case of a critical status plan not expected to emerge from critical status, "reasonable measures to emerge from critical status at a later time or to forestall insolvency…." 29 U.S.C. § 1085(e)(3)(A), ERISA § 305(e)(3)(A).

In other words, with respect to the adoption of the 2010 rehabilitation plan and the 2012 amendment thereto, the statute provides the relevant temporal parameters. The Plan Sponsor, in accordance with ERISA § 305(e), adopts the rehabilitation plan and

ORDER - 3

determines at that time what measures are "reasonably necessary" to enable the plan to either emerge from critical status or to forestall insolvency. The statutory obligations imposed upon the Plan Sponsor on an annual basis do not appear to require any action from the parties to any collective bargaining agreement. S*ee* 29 U.S.C. § 1085(e)(3)(A), (B), ERISA § 305(e)(3)(A), (B).[2] The time period relevant to the claims and defenses in the underlying case is limited, therefore, to what occurred during collective bargaining negotiations in 2014, after the 2012 amendment to the rehabilitation plan was adopted and thereafter presented to the bargaining parties. *See* 29 U.S.C. § 1085(e)(1)(B), ERISA § 305(e)(1)(B) (requiring plan sponsor, within 30 days after the adoption of the rehabilitation plan, to provide the bargaining parties with certain information). Although the Pension Fund and withdrawal from the same may have been agenda items on the negotiation table for the 2017 CBA, any ongoing negotiations are not relevant to the issues before the Court in the underlying action.

---

[2] These provisions require that a rehabilitation plan must provide annual standards for meeting the requirements of the rehabilitation plan, and require the plan sponsor to annually update the rehabilitation plan, as well as the schedule of contribution rates to reflect the experience of the plan.

**ORDER  - 4**

**ORDER**

In accordance with the analysis above, **IT IS HEREBY ORDERED THAT** the request (Dkt. 32) by the Board of Trustees of The PACE Industry Union-Management Pension Fund to expand the scope of the Court's November 14, 2019 Order (Dkt. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that the Board of Trustees of The PACE Industry Union-Management Pension Fund's Motion to Seal (Dkt. 31) is **GRANTED**. It appears good cause exists to seal the attached documents pursuant to the terms of the Court's June 7, 2019 Protective Order, entered in Case No. 3:18-cv-00315-CWD at Docket 63.

DATED: January 24, 2020

_____
Honorable Candy W. Dale
United States Magistrate Judge